UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENERAL MOTORS CORPORATION AND ADAM OPEL GMBH,<br><br>    Plaintiffs,<br><br>  -against-<br><br>FIAT S.p.A.; FIAT AUTO HOLDING B.V.; and FIAT AUTO S.p.A.,<br><br>    Defendants. | INDEX NO.  08 CV 4999 (DAB)<br><br>SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT |

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Plaintiffs General Motors Corporation and Adam Opel GmbH (collectively "General Motors") file the following Statement of Undisputed Material Facts in Support of their Cross-Motion for Summary Judgment.

**The Parties**

1. Plaintiff General Motors Corporation is a corporation organized under the laws of Delaware with its principal place of business in Michigan.  (Defs.' Mot. Hardiman Aff. Ex. C-1 at 3.)

2. Plaintiff Adam Opel GmbH is a corporation organized under the laws of Germany.  (*Id.* Ex. A-1 at 4.)

3. Defendant Fiat S.p.A. is a corporation organized under the laws of the Republic of Italy.  (*Id.*)

4. Defendant Fiat Auto Holding B.V. is a corporation organized under the laws of the Netherlands.  (*Id.*)

5. Defendant Fiat Auto S.p.A. is a corporation organized under the laws of the Republic of Italy.  (*Id.*)

**The Termination Agreement**

6.      General Motors and Fiat entered into the Agreement to Liquidate Joint Ventures and Terminate Master Agreement, dated February 13, 2005 (the "Termination Agreement"). (Defs.' Mot. 4; Hardiman Aff. Ex. E.)

**The Cross Supply Agreement**

7.      General Motors and Fiat entered into the European Powertrain Cross Supply Agreement (the "Cross Supply Agreement"), dated May 13, 2005.  (Hardiman Aff. Ex. C-1.)

8.      The Cross Supply Agreement provides that the Customer "may . . . discontinue to purchase one or more Cross Supply Products upon one year prior written notice to Supplier." (*Id.* § 14.2 at 25; Defs.' Mot. 5.)

9.      In such event, the Cross Supply Agreement provides:

> Upon termination, in whole or in part, Customer guarantees to pay within 30 days from the expiry of the one year written notice period the net book value that has not been recovered in the piece price of the specific investments and capitalized FGP start-up and preproduction expenses that have been allocated to Customer on Cross Supply Products and Spare Parts as shown in Section 7 and Schedule 3.3B and 3.3C (based in part on Exhibit 3.1(v) and Schedule 3.1(a)(iv) of the Umbrella Agreement), but not yet fully paid for as part of the piece price.

(*Id.*)

**The Master Separation Agreement**

10.     General Motors and Fiat entered into the Joint Ventures Separation Master Agreement, dated May 13, 2005 (the "Master Separation Agreement").  (Defs.' Mot. 4; Hardiman Aff. Ex. A-1.)

11.     The Master Separation Agreement states that "[s]pecific investments will be amortized in the piece price over five years as provided in Schedule 3.1(v)." (Hardiman Aff. Ex. A-1 § 3.1(a)(iv) at 10.)

12. Exhibit 3.1(a)(iv) (the "Exhibit") to the Master Separation Agreement contains two provisions obligating Fiat to pay certain investment expenses in the event of its partial or full termination of the Cross Supply Agreement. (*Id*. Ex. A-2 Ex. 3.1(a)(iv).)

13. One provision of the Exhibit governs the terminating customer's obligation to pay "specific" investments. (*Id* ¶ 1(b).)

14. A second provision of the Exhibit provides:

> In the event of partial or full termination of the Supply Agreement for any product family (ie: L850, Fam 1, F40, JTD, M20/32), the remaining net book value of the associated common investment that has not been recovered in piece price are guaranteed to be paid in full at the time of partial or full termination for the specific product family by the respective customer that is partially or fully terminating the supply of this product.

(*Id*. ¶ 3(a).)

15. Section 9.11 of the Master Separation Agreement provides that "[t]he dispute resolution process is as provided in Article 16 of the Termination Agreement which is incorporated herein by reference." (*Id*. Ex. A-1 § 9.11 at 26.)

16. Section 16.5 of the Termination Agreement provides in part that "[t]he foregoing provisions of Section 16 do not preclude the disputing Parties from applying to the United States District Court for the Southern District of New York for preliminary or injunctive remedies to enforce this Section 16 . . . ." (*Id*. Ex. E § 16.5 at 12.)

17. Section 20.9(a) of the Termination Agreement provides in part that "[a]ll Disputes, controversies or claims arising out of or in connection with this Agreement are to be resolved pursuant to Section 16. Subject to the foregoing, each of Fiat and General Motors irrevocably submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York, located in New York City, for the purpose of any action or proceeding arising out of or relating to this Agreement, and each of Fiat and General Motors

hereby irrevocably agrees that all claims in respect to such action nor proceeding may be heard and determined in such federal court." (*Id*. § 20.9 at 17.)

18. Section 20.9 of the Termination Agreement remains in effect pursuant to Section 9.4 of the Master Separation Agreement. (*Id*. Ex. A-1 § 9.4 at 24.)

19. The Master Separation Agreement states in part that "[a]ll rights and remedies of the Parties hereunder shall be in addition to all other legal rights and remedies belonging to them and the same shall be deemed to be cumulative and not alternative to such legal rights and remedies." (*Id*. § 9.3 at 24.)

### The Common Investment Dispute

20. On December 22, 2006, Fiat sent a letter to General Motors to provide notice that it planned to stop purchasing Family 1 engines, effective December 31, 2007. (*Id*. Ex. D.)

21. As the termination date approached, a dispute arose between the parties regarding Fiat's obligation to pay common investment expenses associated with the Family 1 Engines (the "Common Investment Dispute"). (Millikin Decl. ¶ 10.)

22. On January 31, 2008, General Motors sent Fiat an invoice for payment of specific and common investment expenses as well as certain start-up expenses. (Hardiman Aff. Ex. D.)

23. Although Fiat paid the specific and start-up expenses, Fiat refused to pay the common investment expenses. (Millikin Decl. ¶ 12.)

24. On April 18, 2008, General Motors sent Fiat a written Request for Informal Dispute Resolution regarding the Common Investment Dispute. (*Id*. Ex. 1.)

25. On April 24, 2008, Fiat sent a letter responding to General Motors' written Request for Informal Dispute Resolution. (*Id*. Ex. 2.)

26. General Motors sent Fiat a Request for Binding Dispute Resolution on May 30, 2008. (*Id.* Ex. 3.)

27. Fiat has not jointly selected a mediator to facilitate a resolution to the parties' dispute under the dispute resolution procedures set forth in Section 9.11 of the Master Separation Agreement. (*Id.* ¶ 18.)

28. On July 1, 2008, Fiat sent General Motors a Request for Informal Dispute Resolution pursuant to Section 29 of the Cross Supply Agreement. (Defs.' Mot. 14 n.7.)

29. To date, the parties have not resolved the Common Investment Dispute. (Millikin Decl. ¶ 17.)

Dated: August 22, 2008

Respectfully submitted,

FOLGER LEVIN & KAHN LLP
Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, CA  94111
(415) 986-2800


By:   /s/ Roger B. Mead
      Roger B. Mead (RM2676)

      Attorneys for Plaintiffs
      General Motors Corporation and
      Adam Opel GmbH

38006\2006\614812.3